UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:22-cv-00252

| | |
|---|---|
| KAITLIN BRADY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| A STEP ABOVE LIMO SERVICE, LLC, ) | |
| and AYMAN S. ABUSAMAK ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Kaitlin Brady ("Plaintiff" or "Brady"), by and through counsel, brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against A Step Above Limo Service, LLC ("A Step Above") and Ayman S. Abusamak ("Abusamak") (collectively referred to as "Defendants"). Plaintiff also brings North Carolina statutory law claims for violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25 *et seq.*, and North Carolina common law claims for Breach of Contract against A Step Above.

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings her FLSA claim pursuant to 29 U.S.C. § 216(b) and seeks to recover unpaid minimum wages and statutory penalties within the three-year period preceding the filing of this Complaint.

2. Plaintiff's FLSA claims result from Defendants' policy and practice of failing to timely pay Plaintiff all statutory minimum wages earned.

3. Plaintiff's NCWHA claim against Defendants results from Defendants' willful failure to timely pay Plaintiff all wages earned on her regular paydays and the regular payday following the termination of her employment.

4. Plaintiff's Breach of Contract claim against Defendant A Step Above results from A Step Above's breach of the valid and enforceable compensation contract between Plaintiff and A Step Above.

## THE PARTIES

5. Plaintiff is an adult individual who resides in Fort Mill, South Carolina.

6. A Step Above is a domestic limited liability company formed under North Carolina law, with its principal place of business located at 1917 Scott Futrell Dr., Charlotte, North Carolina, 28208.

7. Upon information and belief, Abusamak is an adult individual who resides in Charlotte, North Carolina.

## JURISDICTION AND VENUE

8. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et seq*.

9. This Court has personal jurisdiction because the Defendants conduct business in Mecklenburg County, North Carolina, which is located within this judicial district.

10. Venue is proper in this judicial district because the Defendants have substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County, North Carolina.

11. Plaintiff's NCWHA claim and Breach of Contract claim are based on the law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of facts giving rise to Plaintiff's FLSA claim.

12. The alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## COVERAGE ALLEGATIONS

13. At all relevant times, the Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

14. At all relevant times, the Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engage in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

15. At all relevant times, the Defendants were "employers" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all relevant times, Plaintiff was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

17. At all relevant times, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206.

18. A Step Above is an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

19. Abusamak is an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

20. Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

## PLAINTIFF'S FACTUAL ALLEGATIONS

21. A Step Above specializes in point-to-point, professional limousine service with personalized care in Charlotte, North Carolina, and the surrounding region.

22. Abusamak is the Founder, Owner, and Operator of A Step Above. In this capacity, Abusamak is involved in the day-to-day business operations of A Step Above. Abusamak has the authority to sign on corporate checking accounts, including payroll accounts, and the authority to make decisions regarding wage and hour issues, including the decision to not pay minimum wage and an overtime premium for all hours worked in excess of forty in a workweek. At all relevant times, Abusamak acted and had responsibility to act on behalf of, and in the interests of A Step Above in devising, directing, implementing, and supervising the wage and hour practices and policies relating to employees, including the minimum wage and overtime issues raised in this lawsuit.

23. Brady began her employment with Defendants on or about March 19, 2018, and held the role of Operations Manager. Brady's employment ended on or about January 27, 2022.

24. At all relevant times, Brady met or exceeded the Defendants' legitimate employment expectations. Brady received positive performance reviews during her employment and had no disciplinary action taken against her during her employment with Defendants.

25. At all relevant times, Defendants employed Brady during the three-year period preceding the filing of this Complaint.

26. Defendants failed to compensate Brady with at least $684 per week during 2020 and 2021.

27. The terms and conditions of Brady's employment were governed by "A Step Above Operations Contract" ("Operations Contract") for the years 2020 and 2021. Attached as Exhibit A is a true and accurate copy of the Operations Contract for 2020. Attached as Exhibit B is a true and accurate copy of the Operations Contract for 2021.

28. At all relevant times, Defendants paid Brady a base salary plus commissions and other fringe benefits including reimbursement for mileage, performance bonuses, and company stock.

29. According to the Operations Contract for 2020, Defendants promised Brady an annual salary of $55,200, which equates to $1,061.53 per week. Throughout the entirety of 2020, Defendants paid Brady a total of $9,750.

30. During 2020, Brady routinely worked at least forty (40) hours per week. Brady estimates she worked at least forty-five (45) weeks during 2020. During the COVID-19 pandemic (from approximately March 23, 2020 until June or July 2020), Brady worked from home and did not travel to A Step Above's office. Brady completed her work responsibilities from home, which included answering company emails, contacting clients, marketing Defendants' business, dispatching drivers, completing Defendants' payroll, maintaining insurance on behalf of every customer, and maintaining Defendants' permits with the City of Charlotte and Charlotte Douglas International Airport. In or about June or July 2020, Defendants required Brady to return to A Step Above's office location.

31. Defendants' failed to pay Brady the federal minimum wage of $7.25 per hour during one or more weeks of 2020.

32. By way of example, Defendants did not pay Brady any wages during the week of August 31, 2020 to September 6, 2020, despite Brady working forty (40) or more hours.

33. Defendants failed to pay Brady the overtime premium rate for all hours worked in excess of forty (40) hours in a workweek.

34. By way of example, Defendants did not pay Brady any wages during the week of August 31, 2020 to September 6, 2020, despite Brady working at least forty-five (45) hours in the workweek.

35. According to the Operations Contract for 2021, Defendants promised Brady a annual salary of $67,200, which equates to $1,298.08 per week. Throughout the entire year, Defendants paid Brady a total of $10,627.

36. During 2021, Brady routinely worked forty (40) hours per week and estimates that she worked at least 45 weeks. Brady worked out of A Step Above's office location for the entirety of the year.

37. Defendants' failed to pay Brady the federal minimum wage of $7.25 per hour during one or more weeks of 2021.

38. By way of example, Defendants did not pay Brady any wages during the week of March 15, 2021 to March 22, 2021, despite Brady working forty (40) or more hours.

39. Defendants failed to pay Brady the overtime premium rate for all hours worked in excess of forty (40) hours in a workweek.

40. By way of example, Defendants did not pay Brady any wages during the week of March 15, 2021 to March 22, 2021, despite Brady working at least forty-five (45) hours in the workweek.

41. According to the Operations Contracts, Defendants agreed to reimburse Brady for work-related mileage at $0.58 per mile. Brady tracked her work-related mileage from 2018 to 2021 and drove more than 48,600 miles. Defendants failed to reimburse Brady for work-related

mileage. For 2020 and 2021, Brady estimates the Defendants failed to reimburse her for at least $13,920.00 in unreimbursed work-related mileage.

42. According to the Operations Contracts, Defendants agreed to pay Brady a commission equal to three percent (3%) of all net sales of new accounts. Brady estimates her unpaid earned commissions exceed $250,000. Defendants failed to pay Brady for any of her earned commissions.

43. According to the Operations Contracts, Defendants agreed to provide Brady with a performance bonus equal to $5,000 for each account that exceeded $1 million. Brady estimates she is owed this bonus for at least two accounts. Defendants failed to pay Brady any performance bonus.

44. According to the Operations Contract, Defendants agreed to provide Brady with a 2% equity stake in A Step Above after three years of employment. Brady estimates the current valuation of her equity share to exceed $200,000.

45. Defendants knew or should have known that they owe Brady for unpaid minimum wage and overtime premium because Brady complained about not being paid to Abusamak on multiple occasions. Abusamak responded that Brady "would be paid correctly, but she just needed to be patient."

## COUNT I
**(Violation of FLSA – Minimum Wage) (*against both Defendants*)**

46. Plaintiff incorporates by reference Paragraphs 1 through 45 of her Complaint.

47. Count I arises from the Defendants' policy and practice of failing to pay Plaintiff the established minimum wages during 2020 and 2021.

48. Defendants violated the FLSA by failing to timely pay Plaintiff all statutory minimum wages she earned during her employment.

49. Defendants' violation of the FLSA was willful.

## COUNT II
**(Violation of FLSA – Overtime) (*against both Defendants*)**

50. Plaintiff incorporates by reference Paragraphs 1 through 49 of her Complaint.

51. Count II arises from Defendants' policy and practice of failing to pay Plaintiff an overtime premium rate of pay for all hours worked over forty (40) in a workweek.

52. Defendants' violated the FLSA by failing to pay Plaintiff an overtime premium rate of pay for all hours worked over forty (40) in a workweek.

53. Defendants' violation of the FLSA was willful.

## COUNT III
**(Violation of NCWHA – Failure to Pay Wages) (*against both Defendants*)**

54. Plaintiff incorporates by reference Paragraphs 1 through 53 of her Complaint.

55. Count III arises from the Defendants' policy and practice of failing to pay earned wages on the regularly scheduled payday in violation of N.C. Gen. Stat. § 95-25.6.

56. Defendants violated N.C. Gen. Stat. § 95-25.6 by failing to pay Plaintiff earned wages on the regularly scheduled payday during 2020 and 2021.

57. Defendants' violation of the NCWHA was willful.

## COUNT IV
**(Violation of NCWHA – Failure to Pay Wages at Separation) (*against both Defendants*)**

58. Plaintiff incorporates by reference Paragraphs 1 through 57 of her Complaint.

59. Count IV arises from the Defendants' policy and practice of failing to pay earned wages on the next regular payday following the termination of Plaintiff's employment in violation of N.C. Gen. Stat. § 95-25.7.

60. Defendants violated N.C. Gen. Stat. § 95-25.7 by failing to pay Plaintiff earned wages on the next regular payday following the termination of her employment.

61. Defendants' violation of the NCWHA was willful.

## COUNT V
### (Breach of Contract) (*against A Step Above*)

62. Plaintiff incorporates by reference Paragraphs 1 through 61 of her Complaint.

63. The parties, for valuable consideration, entered into a valid and enforceable contract whereby A Step Above agreed to provide Plaintiff with a base salary, commissions, and other fringe benefits.

64. In breach of the agreement's express terms, Defendants failed to pay Plaintiff her base salary, earned commissions, and other eligible fringe benefits.

65. A Step Above has refused repeated attempts by Plaintiff to rectify its Breach, thus forcing Plaintiff to initiate this matter.

66. Plaintiff is entitled to damages from A Step Above's breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly and severally liable for unpaid minimum wages and unpaid overtime wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

b) An Order pursuant to the NCWHA finding Defendants jointly and severally liable for unpaid regular wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

c) An Order finding A Step Above breached its contract with Plaintiff to a base salary, earned commissions, and other fringe benefits and award damages equal to the unpaid compensation found due to Plaintiff;

d) An Order awarding the costs of this action;

e) An Order awarding reasonable attorneys' fees;

f) A Declaration and finding by the Court that Defendants did not act in good faith when they violated provisions of the NCWHA by failing to comply with the statutory requirements regarding timely payment of earned commissions;

g) An Order awarding compensatory damages for Defendants' breach of contract;

h) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

i) An Order granting such other and further relief as may be necessary and appropriate.

Dated: June 2, 2022,

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, NC 28277
Telephone: (704) 612-0038
Facsimile: (704) 612-0038
Email: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiff*